UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LADONNA F. BRADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:17CV360-PPS |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Ladonna Bradley appeals the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration. Bradley is a 47 year old woman who previously worked as a home health attendant, a cashier, and a cabinet assembler. On January 22, 2013, Bradley sustained serious injuries in a car accident in which she veered off the road and her car flipped multiple times. Shortly thereafter, on May 8, 2013, she filed a claim with Social Security alleging that she became disabled as of the date of the accident. [AR at 102, 57.][1]

Bradley had a hearing before an administrative law judge on July 2, 2015, at which Bradley appeared with her attorney and gave testimony. [AR at 50-101.] The ALJ issued a written decision denying Bradley's claim for benefits on November 4, 2015. [AR 35-45.] The ALJ found that Bradley has severe impairments of degenerative disc

---

[1] The administrative record [AR] is found in the court record at docket entry 10, and consists of 725 pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

disease of the cervical spine and the lumbar spine, a history of left humerus fracture status post open reduction internal fixation, history of pelvis fracture times three, and osteoarthritis of the knees. [AR at 37.] The ALJ concluded that Bradley's severe impairments do not conclusively establish disability by meeting or medically equaling the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [AR at 38.] The ALJ found that Bradley possessed the residual functional capacity to perform light exertional work with certain limitations, that she was capable of performing jobs that exist in significant numbers in the national economy, and that Bradley is not disabled. [AR at 38, 44-45.]

Bradley asks me to reverse the ALJ's decision and remand the case for further proceedings by the Social Security Administration. My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "In rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), quoting *Schmidt v.*

2

*Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). The ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Bradley makes three arguments in support of her appeal but I will only address the one concerning the credibility determination made by the ALJ.

Bradley argues that the ALJ committed error in his analysis of her claims of subjective symptoms, that is, pain and resulting limitations in her ability to stand, sit and walk. Because Bradley's physical conditions could reasonably be expected to produce the pain and other symptoms she claimed, the ALJ was required to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms," which included making "a finding on the credibility of the statements based on a consideration of the entire case record." [AR at 39.] *See* 20 C.F.R. §416.929. At several points in his decision, the ALJ states his conclusion that Bradley's statements about her pain and other subjective symptoms are not entirely credible. [AR at 39, 42, 43.]

A court "give[s] the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). Even so, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th

3

Cir. 2015). This sort of inadequate explanation is a species of failing to provide a logical bridge between the evidence and the ALJ's conclusions. *Minnick*, 775 F.3d at 937.

The parties have starkly different views of what constitutes the ALJ's explanation of his evaluation of Bradley's subjective complaints. Bradley's challenge would limit the ALJ's analysis to two particular paragraphs which she subjects to microscopic critique. The Commissioner views the issue more broadly, suggesting that the entire section of the ALJ's decision addressing his residual functional capacity determination (some 5 pages of review of the medical record and Bradley's testimony) supports his conclusion that Bradley's claims about her symptoms are not entirely credible. The Commissioner's view is consistent with the ALJ's responsibility (and stated intention) to "make a finding on the credibility of the statements based on a consideration of the entire case record," which includes "the objective medical evidence, the clinical findings on examination, the treatment records discussed above, the lack of treatment pursued by the claimant, and the consultant opinions at Exhibits 1A and 3A, all of which suggest greater sustained capacity than described by the claimant." [AR at 39, 43.] *See* 20 C.F.R. §416.929(a).

Even so, I find that reversal is required because the ALJ's treatment of the credibility of subjective symptoms is then so broadly spread that it is not subject to meaningful judicial review. If I give the ALJ the benefit of the entire RFC discussion as support for his credibility conclusion, as I am inclined to do, then his rationale is not explained in enough detail to demonstrate the logical bridge from the evidence to the conclusion. If I take Bradley's view, and consider the credibility rationale to be limited

4

to the two paragraphs at AR 42 focusing on Bradley's "good recovery" from the accident, her reliance on opioids rather than physical therapy, and her persistence in smoking, I also find the conclusion not to be adequately supported.

Bradley correctly points out that the healing of her fractures from the accident was not the end of her complaints of pain, both then and thereafter. The August 21, 2013 notes of Drs. Boyer and Sieradzki, which are necessarily the source of the ALJ's conclusion that Bradley was well recovered from her accident, reflect her continuing reports of pain. Although Dr. Sieradzki found that Bradley's shoulder fracture had healed and showed stable alignment, he also examined her right knee based on her complaints of pain and "occasional catching and locking," and found that "she likely has a medial meniscus tear" that "could be treated with arthroscopy." [AR at 517-18.] That day Bradley complained to Dr. Boyer of sharp pain "in the right sacral area and her lower back" increasing over the past few months. [AR at 539.] Although Dr. Boyer found that her fractures were healed and that he "could not necessarily reproduce her pain," he acknowledged that "certainly there could be pain that we cannot explain." [*Id.*] Further, he noted that images of her spine showed "fairly severe facet arthritis at the L5-S1 level" which "could correlate to her increasing back pain." [*Id.*]

This diagnosis is confirmed by MRI of Bradley's lumbar spine several months later on October 17, 2013 showing severe bilateral facet arthropathy at L5-S1, as well as mild diffuse disk osteophyte complex formation contributing to mild stenosis of bilateral neural foramina and a mild stenosis of bilateral lateral recess, and edema in the pedicle

5

bilaterally of L5 and S1. [AR at 555.] On November 13, 2013, Bradley saw Dr. Filipowicz, complaining of back pain and pain radiating down both legs, which prevented her from standing longer than 10 minutes at a time to wash dishes and from walking more than a block or two. [AR at 582.] A year later on November 3, 2014, Dr. Filipowicz noted that Bradley had shown no improvement in the conditions of her L5-S1 after 2 years. [AR at 589.] The ALJ fails to address how he considered (but apparently rejected) all this support in the medical record for a continuing condition that might explain Bradley's complaints of disabling pain, which he found not to be credible.

The ALJ makes much of Bradley's failure to complete physical therapy, but at the same time he notes her professed financial inability to pay for physical therapy given her lack of insurance, so it's unclear that he appropriately considered her failure to seek or comply with physical therapy as a treatment for her pain. [AR at 42, 656.] "The ALJ may deem an individual's statements less credible if medical reports or records show that the individual is not following the treatment as prescribed," but "such evidence should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). *See also Schmidt v. Colvin*, 545 Fed.Appx. 552, 556 (7th Cir. 2013) (remand where ALJ, who is "required to consider any explanation a claimant provides for his failure to pursue a given medical treatment," failed to explain why he found reasons for stopping physical therapy implausible). The ALJ discredits Bradley in part because as of November 10, 2014 she was not performing "back stabilizing" exercises at home. [AR at 42, 656.] But

6

this finding is made without acknowledging Bradley's hearing testimony to the contrary. [AR at 82.] These considerations poke further holes in the ALJ's credibility findings.

As for Bradley's continued smoking despite doctors' recommendations that she quit, "that would not be a reason to discredit [her] without evidence of how smoking affects [her] impairments." *Williams v. Berryhill*, 707 Fed.Appx. 402, 406 (7th Cir. 2017). The record reflects that although Dr. Boyer told Bradley that smoking affects healing, he later observed that her pelvic fractures were healed. [AR at 492, 539.] A denial of benefits based on non-compliance with medical directives requires "' a finding that if the claimant followed her prescribed treatment she could return to work.'" *Shramek v. Apfel*, 226 F.3d 809, 812 (7th Cir. 2000) (quoting *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)). Like *Rousey*, this case lacks any evidence demonstrating that Bradley "would be restored to a non-severe condition if she quit smoking." *Shramek*, 226 F.3d at 813.

Bradley testified to excruciating back pain that prevents her from standing more than 10 minutes at a time and sitting for more than 30 minutes. [AR at 68.] The medical record substantiates severe arthritis in her lower back, persisting beyond the healing of the pelvic fractures that resulted from her auto accident. [AR at 539, 555.] The ALJ (and some of Bradley's doctors) seemed concerned that Bradley was dependent on opioid painkillers, but that concern does not address or negate the pain underlying their use. For the ALJ's failure to provide the required logical bridge between the evidence and his conclusion that Bradley's subjective complaints and limitations are not credible, the

7

denial of benefits must be reversed and remanded for further consideration of the impact of Bradley's subjective complaints on her residual functional capacity.

**Conclusion**

An ALJ must build a logical bridge from the evidence to his conclusion. *Brown v. Colvin*, 845 F.3d at 251; *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). The ALJ has not provided a logical explanation linking the evidence to his rejection of Bradley's subjective complaints. Even using the applicable deferential standard of review, I conclude that the ALJ's determinations of Bradley's RFC and ability to perform light exertional work with some limitations are not supported by relevant evidence such as a reasonable mind might accept as adequate to support his conclusions. *Moore*, 743 F.3d at 1120-21. The Commissioner's final decision denying 's application for disability benefits will be reversed and remanded for further proceedings consistent with this opinion.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Ladonna F. Bradley's application for Social Security Disability benefits is REVERSED AND REMANDED for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against defendant.

**SO ORDERED**.

ENTERED: July 10, 2018.

                                          /s/ Philip P. Simon
                                        **PHILIP P. SIMON, JUDGE**